# Law Offices of Colin Mulholland

Employment and Civil Litigation

36-36 33rd Street
Suite 308
Astoria, NY 11106

Telephone: (347) 687-2019
cmulhollandesq@gmail.com

May 7, 2025

**VIA ECF**
Honorable Steven I. Locke
United States Magistrate Judge
100 Federal Plaza
Central Islip, NY 11722

Re: Martinez Rivas v. Ariel Auto Collision Corp. et al., 23-cv-5371

Your Honor:

I represent Plaintiff in the above-referenced case. I write to respectfully request that the Court approve the parties' settlement agreement as a fair and reasonable resolution of a *bona fide* dispute in accordance with, *inter alia*, the Fair Labor Standards Act ("FLSA").

The parties have agreed to a negotiated Settlement Agreement (the "Agreement"). The proposed Agreement is attached hereto as **Exhibit A.** The parties therefore ask the Court to approve the settlement pursuant to *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (U.S. 2016).

The parties represent to the Court that while Plaintiff believes that the settlement amount is less than what the Plaintiff would be entitled to if he had prevailed on all of his claims at trial, the settlement is fair, as discussed herein, in light of the risks of litigation.

## **Background**

Plaintiff alleged the following:

Throughout his employment with defendants, Plaintiff MARTINEZ was employed as a mechanic and general laborer at the body shop located at 501 Atlantic Avenue Freeport, NY 11520 and 5030 69th PL Woodside, NY 11377.

From 2013 until October 2022, Plaintiff MARTINEZ typically worked six (6) days per week from 8:00 A.M. until between 5:30 P.M. and 6:30 P.M., every day except Saturdays.

Defendants paid Plaintiff MARTINEZ a fixed day rate during his employ of $191.00 regardless of how many hours he worked in a week and without a premium for his overtime hours..

Defendants vehemently disputed the amount of hours worked by Plaintiff and the amount, and character, of pay during certain time periods. Defendants also deny that Plaintiff was paid a fixed daily rate and was instead paid on an hourly basis. Defendants further disputed the term of employment and raised credible issues regarding ability to pay.

Based on the Plaintiff's initial recollections of hours worked and pay received, Plaintiff estimates his base case scenario would be $46,654.00 in unpaid wages before liquidated damages. **Exhibit B** Damages Chart.

Plaintiff is fully aware that his claims would or could be worth more than the settlement. After carefully explaining the options going forward and the risks of protracted litigation combined, Plaintiff has chosen to accept a lump sum settlement of $25,000.00 to resolve his claims.

### Settlement

The parties have agreed to settle this action for the total sum of $25,000.00 which will be paid as outlined in **Exhibit A** within seven (7) days of settlement approval**.**

The total costs of this action are $1,158.00 in costs of the action.

Plaintiff will receive himself Fifteen Thousand Nine Hundred and Two Dollars and Forty-Five Cents ($15,902.45) from the settlement after counsel's applied-for fees and costs.

The settlement fund represents a significant sum of money for Plaintiff and reflects a fair compromise of his respective best-case scenario in light of the risks of proceeding to trial.

The remaining third of the settlement – Nine Thousand and Ninety-Seven Dollars and Fifty-Five Cents ($9,097.55) - will be applied as attorneys' fees and costs, subject to the Court's review and approval.

## Fairness

"In considering whether a settlement is fair and reasonable, the principal question is 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" Cheeks v. Freeport, (quoting Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)).    Courts consider factors including "(1) the Plaintiffs' range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky v. Scholastic, 900 F.Supp.2d at 225 (quoting Medley v. Am. Cancer Soc., No. 10-cv-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

The agreement here is fair to Plaintiff.  Plaintiff has been represented by experienced counsel throughout this lawsuit and he has made an informed decision to settle the action at this stage of litigation without the risk of a contrary finding of fact at trial on either their hours worked or term of their employ.

Moreover, courts often recognize that settling a claim sooner rather than later is often valuable in its own right.  See Reyes v. Buddha-Bar NYC, No. 08 Civ. 2494, 2009 WL 5841177,

at *3 (S.D.N.Y. May 28, 2009) (approving FLSA settlement and discussing how "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation").

Critically, the parties settled this case following a mediation before an experienced, disinterested mediator Elena Paraskevas-Thadani, Esq., removing any notion that there was any collusion between the parties and/or their counsel.

**<u>Attorneys' Fees Are Fair and Reasonable</u>**

Under the settlement, Plaintiff's counsel will receive – Nine Thousand and Ninety-Seven Dollars and Fifty-Five Cents ($9,097.55) - from the settlement fund as attorneys' fees and costs, subject to review and approval of the court. This represents one third of the recovery and costs in this litigation in keeping with the Plaintiff's agreement with counsel. The undersigned has attached contemporaneous billing records along with this application evidencing counsel's lodestar. **<u>See</u> Exhibit C** *Lodestar.*

With respect to fees, a court may calculate a reasonable attorneys' fee either by determining the so-called 'lodestar' amount <u>or</u> by awarding a percentage of the settlement. **<u>See</u>** <u>McDaniel v. Cty. of Schenectady</u>, 595 F.3d 411, 417 (2d Cir. 2010).

"However, 'the trend in this Circuit is toward the percentage method,' although it is for district court to determine 'the appropriate method' in a particular case […] the percentage method […] avoids the lodestar method's potential to create a disincentive to early settlement." **<u>See</u>** <u>Hyun v. Ippundo USA Holdings, et al.</u>, 14-cv-8706 (AJN), 2016 U.S. Dist. LEXIS 39115 (S.D.N.Y. Mar. 24, 2016) (internal citations omitted).

Courts in this district generally find 33.3% of a settlement allocated for attorneys' fees to be reasonable when negotiated as part of a one-third contingency fee arrangement. **<u>See</u>** <u>Garcia v.</u>

Pancho Villa's of Huntington Village, Inc., No. 09 CV 486, 2012 WL 5305694, at *8 (E.D.N.Y. Oct. 4, 2012).

"[C]ourts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable." Oxley v. EXCELLENT HOME CARE SERVICES, LLC, 18-cv-2374-RJD-CLP, Dist. Court, ED New York Jan. 8th 2020 (approving 1/3 percentage of the fund in FLSA matter)

"[A] one-third contingency fee is a commonly accepted fee in this Circuit." Calle v. Elite Specialty Coatings, Inc., No. 12 CV 6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 19, 2014); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13 CV 3234, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) ("This fee arrangement [of one third of the settlement amount plus costs] is routinely approved by courts in this Circuit."); Rodriguez-Hernandez v. K Bread Co. Inc., No. 15 CV 6848, 2017 WL 2266874, at *7 (finding "30% of the total settlement [to be] a reasonable and appropriate attorney's fee award).

The undersigned here has such an arrangement with Plaintiff for a 33.3% contingency fee net of costs. – a retainer agreement is considered "documentation to support" the 33.3% fee in this case. **See generally** Miller v. United Parcel Serv., Inc., No. 20-CV-05244 (JMW), 2023 WL 2214107, at *4 (E.D.N.Y. Feb. 24, 2023) ("Following Fisher, courts in this district have independently found an attorney fee representing one-third the settlement amount reasonable, where the attorney provided documentation of the signed retainer agreement between the attorney and Plaintiffs").

"We will not compare the one-third contingency payment to the actual hours expended by counsel — commonly called a "lodestar cross check" — to determine the reasonableness of the fee as many courts do. See, e.g., Huggins v. Chestnut Holdings Inc., 2022 WL 44748, at *3

(S.D.N.Y. Jan. 5, 2022). We decline to perform a "lodestar cross check" because it would have no bearing on our assessment of the reasonableness of the fee sought if it turned out that the "lodestar" for counsel's hours (that is, a reasonable hourly rate multiplied by the reasonable number of hours expended) is far less than the one-third contingency payment. A "lodestar cross check" is of course appropriate, and indeed required, where a court is being asked to award a percentage of a common fund in attorney's fees. See, e.g., Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 438 (S.D.N.Y. 2014). Here, however, there is no common fund created by the settlement. Instead, the Plaintiffs and the attorney agreed in advance that the attorney would be entitled to one-third of the settlement as attorney's fees. The very purpose of a contractual contingency fee arrangement is to ensure recovery for an attorney regardless of the number of hours actually expended by the attorney. In other words, attorneys who take on FLSA cases on contingency bear the risk of having to litigate cases in which the recovery may not adequately compensate them for the time expended. See generally King v. Fox, 2004 WL 68397, at *5 (S.D.N.Y. Jan. 14, 2004) ("Contingency fees account for the risk taken in representing a client"). Therefore, in cases where attorneys spend fewer hours than would be expected to match the amount in the contingency arrangement, it is only proper that they be permitted to collect their contracted fee given the risk they have assumed. "[A] contingency fee arrangement provides an incentive to counsel to take on cases that are less than sure winners." See Blizzard v. Astrue, 496 F. Supp. 2d 320, 325 (S.D.N.Y. 2007). Finding such contingency fee arrangements not "reasonable" under Cheeks whenever the attorneys achieve a significant benefit from the contingency arrangement will only serve to diminish the pool of attorneys willing to accept the risks in FLSA cases. This runs counter to one of the purposes of the FLSA — to provide an avenue for workers deprived of their just wages to seek redress in the courts — and is therefore

rejected.

Instead, we must independently judge whether the percentage contingency arrangement is itself "reasonable." We believe such an analysis, however, must be conducted ex ante --- not in light of the actual number of hours expended after the contingency fee arrangement was made. Certainly, we would not find "reasonable" any contingency fee arrangement that was itself the product of fraud, deception, or overreaching. See generally Wells v. Sullivan, 907 F.2d 367, 369 (2d Cir. 1990) (contingency fee arrangement will not be enforced where there has been "fraud or overreaching"); In re Lawrence, 24 N.Y.3d 320, 339 (N.Y. 2014) (contingency fee arrangement enforced in the absence of "incompetence, deception or overreaching" or if "void at the time of the inception"). It is certainly possible that a contingency fee arrangement in a particular case might be ex ante unreasonable — for example, where an employer had already offered to pay an employee full or substantial damages and the client hired the attorney merely to effectuate the settlement. Here, however, there is no indication of any such overreaching or of any deceptive conduct.

As to the amount of the contingent payment, we would have no compunction about disapproving a percentage amount that was outside of the range of what FLSA practitioners demand in the marketplace, even if the retainer agreement was not otherwise void or questionable. If the arrangement provided a payment in excess of that range, disapproving such a contingency would do nothing to diminish the market of available attorneys to take on FLSA cases. It is settled, however, that "one-third of the total award is the customary contingency percentage in FLSA cases." **Garcia v. Atlantico Bakery Corp.**, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016).

Thus, regardless of the number of hours actually spent by counsel on this case, this Court should find that the contingent fee arrangement was fair to and reasonable at the time it was made. Accordingly, the Court approves the attorney's fees and costs in the settlement agreement as they are consistent with the retainer agreement agreed to by Plaintiffs." **Almanzar v. Silver Star Properties Corp.**, No. 23 CIV. 819 (GWG), 2023 WL 6979460, at *2–3 (S.D.N.Y. Oct. 24, 2023)

To the extent this Court engages in a cross-check based on the lodestar, the undersigned respectfully asks for a multiplier.

"Assuming the multiplier here is somewhat higher than normally awarded, this Court nonetheless recognizes the importance of **encouraging the swift resolution of cases** like this one and **avoiding 'creat[ing] a disincentive to early settlement'**—particularly where such settlement has provided Plaintiffs with a **substantial and speedy result**." Pinzon v. Jony Food Corp., et al., No. 18-cv-105 (RA) S.D.N.Y. May 24th, 2018. (emphasis added) (Court approved a multiplier of 5.23 in a single Plaintiffs FLSA matter involving the undersigned; see also Johnson v. Brennan, No. 10-CV-4712 (CM), 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar."); Shapiro v. JPMorgan Chase & Co., No. 11-CV-7961 (CM), 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) ("Lodestar multipliers of nearly 5 have been deemed `common' by courts in this District.")

"Courts regularly award multipliers from two to six times the lodestar." Monserrate v. TEQUIPMENT, INC., 11-cv-6090 (RML) Dist. Court, EDNY, Nov. 16th, 2012 (collecting cases and applying a multiplier of 4.34)

"When applying the lodestar method, courts generally 'apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation,

and the results achieved.'" <u>Pucciarelli v. Lakeview Cars, Inc</u>., Dist. Court, ED New York 2017 (quoting *In Re Platinum & Palladium Commodities Litig.*, No. 10-CV-3617 (CCH), 2015 WL 4560206, at *3 (S.D.N.Y. July 7, 2015).

Moreover, in <u>Fisher v. SD Prot. Inc</u>., 948 F.3d 593 (2nd Cir. 2020), the Second Circuit held that the proportionality of an attorney fee award to the Plaintiffs' recovery should not be viewed by the district court as an "outcome determinative factor in evaluating the reasonableness" of the fee and further emphasized the importance in incentivizing the Plaintiffs' bar to take small and/or difficult cases.

Counsel would respectfully request that the Court consider a multiplier that takes these factors into account.

<u>Reasonableness of Rates:</u>

"Additionally, in an individual FLSA action (as opposed to a collective or class action) in which the parties settle the fee through negotiation, the 'range of reasonableness' for attorneys' fees is greater than in a collective or class action." <u>Dominguez v. Architectural Sign Group</u>, et al. 18-cv-5514 (KAM) (JO) October 17th, 2019.

The highest approved rate approved for the undersigned is $375.00 per hour which was explicitly approved by the Honorable Richard Sullivan in 2018. **See** <u>Wilmer Calle et al. v. NDG Coffee Shop, Inc, et al.</u>, No. 16-cv-7702 (SDNY 2018).   The undersigned now respectfully submits a lodestar calculation applying that same rate to the case at bar. **See Exhibit C.**

And, this rate has also been explicitly been approved by Chief Magistrate Cheryl L. Pollak in 2022:

"Based on the Court's knowledge of the rates generally charged for this type of work in connection with an FLSA default, the Court finds that the rate of $375 per hour for a sole

practitioner of Mr. Mulholland's experience is within the range of billing rates of similarly experienced attorneys working on comparable matters in the Eastern District. See, e.g., Sajvin v. Singh Farm Corp., No. 17 CV 4032, 2018 WL 4214335, at *9 (E.D.N.Y. Aug. 13, 2018) (awarding $500 per hour to partner in FLSA case, though noting that "$450 has been the upper limit in this District since at least 2013"); Gutman v. Klein, No. 03 CV 1570, 2009 U.S. Dist. LEXIS 123057, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (stating that rates between $300 and $400 for partners are within the reasonable range in the Eastern District of New York)." Cruz v. O & M Pizza Corp., 2022 U.S. Dist. LEXIS 148240, *29-30, 2022 WL 3448661; see also Flores v. Urciuoli, 2022 U.S. Dist. LEXIS 5637, *20, 2022 WL 987353

In an effort to support the application of the above hourly rate, the undersigned also respectfully submits the following brief biography:

I am a solo practitioner who focuses on FLSA and employment claims in New York City. I was admitted to practice in February of 2013. Prior to managing my own practice, I have been litigating dozens upon dozens of FLSA claims and employment claims throughout the entirety of my career. I have been lead counsel on over 40 cases in the Eastern District and over 100 cases in the Southern District – almost all of those cases being FLSA cases that resulted in favorable settlements for my clients.

The undersigned has successfully conducted the trial of four (4) FLSA claims as sole trial counsel in the Southern District.  Each of those trials resulted in a significant finding of liability in favor of the .  These trials included two jury verdicts in favor of :

      i.    Wilmer Calle et al v. NDG Coffee Shop, Inc. yielded a jury verdict of over $2.2 million dollars before the Honorable Richard J. Sullivan.

        ii.    <u>Carrasco Flores et al v. NYC Pasta and Risotto Co. LLC</u>. yielded a verdict of over $195,000.00 before the Honorable Lorna G. Schofield.

Plaintiff's counsel spent 21.2 hours litigating this case. **<u>See</u> Exhibit C** *Lodestar*.  The total costs amount to $1,158.25.00.  The undersigned would ask the Court to take judicial notice of the $402.00 filing fee connected with opening this case, $581.25 for the mediation fee and $175.00 for service of process.

While whether or not the amount of proposed attorneys' fees exceeds the lodestar depends on the hourly rate this Court endorses for Plaintiff's counsel; it is important to cite that the percentage method provides a <u>powerful incentive</u> to attorneys in contingency fee FLSA cases to obtain the highest possible settlement amount for their clients and to avoid unnecessary litigation. **<u>See</u>** <u>Hyun v. Ippundo USA Holdings, et al.</u>, 2016 U.S. Dist. LEXIS 39115, *7 (S.D.N.Y. Mar. 24, 2016) ("[T]they Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement,' is appropriate") (quoting *McDaniel v. City of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010)).

Here, Plaintiff was able to obtain a satisfactory outcome against experienced defense counsel. In addition, the fees requested are in accordance with Plaintiff's retainer agreements with counsel.  Accordingly, the Agreement should be approved as fair and reasonable.

The parties thank the Court for its review of this submission.

Respectfully Submitted,

<u>/s/ Colin Mulholland, Esq.</u>